UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

John H.W. Gefaell d/b/a Tall Grass Capital          Case No. 12-13561-EPK
Partners, LLC, f/d/b/a Warm Springs                 Chapter 13
Development, LLC,

      Debtor.

_____/

## WELLS FARGO BANK'S MOTION FOR RELIEF
## FROM THE AUTOMATIC STAY (REAL PROPERTY)

Wells Fargo Bank, N.A., as Trustee for ABFC 2004-OPT4 Trust, ABFC Asset-Backed

Certificates, Series 2004-OPT4 (the **"Movant"**), by and through its attorneys, moves, pursuant to

11 U.S.C. § 362, for relief from the automatic stay with respect to the real property of the Debtor

having an address of 5 Chapman Road, Westerly, Rhode Island 02891 (the "Property").  The

facts and circumstances supporting this Motion are set forth in the (i) Affidavit in Support of

Motion for Relief from Automatic Stay attached as Exhibit D (the "Affidavit") and (ii)

Indebtedness Worksheet attached as Exhibit E (the "Indebtedness Worksheet").  In further

support of this Motion, Movant respectfully states:

     1.     A petition under Chapter 13 of the United States Bankruptcy Code was filed with

respect to the Debtor on February 14, 2012.

     2.     A hearing to consider confirmation of the Chapter 13 Plan of the Debtor is

scheduled for July 16, 2012.

     3.     Upon information and belief, the Property has been claimed exempt by the

Debtor.

C96.2408

4.      The Debtor has executed and delivered or is otherwise obligated with respect to the promissory note in the original principal amount of $676,800.00 (the "Note").  A true and correct copy of the Note is attached as <u>Exhibit A</u>.  Movant is an entity entitled to enforce the Note.

5.      Pursuant to the Mortgage (the "Mortgage") as recorded with the Town Clerk of the Westerly, Rhode Island at Book 1260, Page 309, all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property.  A true and correct copy of the Mortgage is attached as <u>Exhibit B</u>.

6.      All rights and remedies under the Mortgage have been assigned to the Movant as evidenced by the assignment of mortgage, a true and correct copy of which is attached as <u>Exhibit C</u>.

7.      The legal description of the Property is:

> That certain tract or parcel of land, together with buildings and improvements thereon, lying and being in the Village of Weekapaug in said Town of Westerly, County of Washington and State of Rhode Island and being shown as Lot #96 on a certain plan or plat entitled "Plat of land at Weekapaug Beach on Noyes Neck in the Town of Westerly, R.I., showing all the land now owned by the Annie L. Chapman Estate, also showing adjacent properties.  Plat compiled from surveys by T.G. Hazard Jr., during 1906 and revisions of same to June 1946 and from actual surveys by Leon L. Holland to Juen 1947.  Complied and platted June 28, 1947, Leon L. Holland, Civil Engineer, Scale: 1inch equals 100 feet." Said tract being more particularly bounded as follows:
>
> Beginning at a point on the southerly side of Chapman Road, so-called, said point being the northwesterly corner of the parcel herein conveyed and also being the northwesterly corner of land now or formerly of Charles E. Smith, et ux.;
>
> Thence easterly along the southerly line of Chapman Road fifty-nine and seventy-two hundredths (59.72) feet to the northeasterly corner of the parcel herein conveyed, said point also being the northwesterly corner of land now or formerly of Frank B. Avery and wife;

C96.2408

Thence southerly bounded easterly to said Avery land three hundred ten (310`) feet, more or less, to land now or formerly of Milan Moscaritolo;

Thence northwesterly and westerly bounded southerly to said Moscaritolo land and land now or formerly of Joan N. Kempfe to the southwesterly corner of the parcel herein conveyed;

Thence northerly three hundred (300') feet to the point and place of beginning. Bounded westerly by land now or formerly of John Robert Walsh, land now or formerly of M.M. Eade, et ux., land now or formerly of E.L. Harvey, land now or formerly of S.R. Smith et ux., and land now or formerly of Charles E. Smith et ux. or however otherwise bounded.

Together with all the rights to use all the avenues, roads and lanes designated on said plat, as are now open or may be hereafter opened to public ways, for all purposes for which streets and highways are customarily used in said westerly and also a right of way to the Atlantic Ocean over land now or formerly of Chapman Realty Corporation by such paths as now exist or may be hereafter designated for such.

8.      The post-petition payment address is: Wells Fargo Bank c/o Homeward Residential, Inc., 1525 S. Belt Line Rd., Coppell, TX 75019.

9.      The total prepetition indebtedness of the Debtor, as more fully detailed and reflected on the Indebtedness Worksheet, is $685,442.74.

10.      The total post-petition indebtedness of the Debtor(s), as more fully detailed and reflected on the Indebtedness Worksheet, is $25,686.96.

11.      The estimated market value of the Property is $918,900.00.  The basis for such valuation is the Debtor`s Schedule A.  The Movant adopts this figure for the purposes of this Motion but reserves the right to request access to the Property for the purpose of conducting an interior appraisal to more accurately quantify its value, in the event that the value of the Property is contested.

12.      Upon information and belief, the aggregate amount of encumbrances on the

C96.2408

Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $711,129.70.

13.     Cause exists for relief from the automatic stay for the following reasons:

(a)     Movant's interest in the property is not adequately protected.

(b)     The Debtor treats Movant's claim outside the Chapter 13 Plan.

WHEREFORE, Movant respectfully requests that this Court issue an Order terminating or modifying the stay and granting the following:

A.     Relief from the stay allowing Movant, its successors and assigns, to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

B.     That the Order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

C.     That all direct communications are allowed between Movant, its successors and assigns, and Debtor in connection with proceeding against the Property including, but not limited to, notices required by state and federal law and communications to offer and provide information with regard to a potential forbearance agreement, loan modification, refinance agreement, loss mitigation agreement or other loan workout.

D.     For such other relief as the Court deems proper.

                                        Respectfully submitted,

Dated: June 26, 2012                    /s/ Reka Beane
                                        Reka Beane, Esq.
                                        Florida Bar No. 52919
                                        rbeane@acdlaw.com
                                        Ablitt|Scofield, P.C.
                                        The Blackstone Building

C96.2408

100 South Dixie Highway, Suite 200
West Palm Beach, FL 33401
Telephone: (561) 422-4668
Fax: (561) 249-0721
Attorney for Wells Fargo Bank

C96.2408

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have caused to be served a copy of the foregoing Motion for Relief, by first class mail, postage prepaid and/or by CM/ECF electronic filing upon the parties listed below.

Dated: <u>June 26, 2012</u>                              <u>/s/Reka Beane</u>
                                                          Reka Beane, Esq.
                                                          Florida Bar No. 52919

<u>Copies Furnished To</u>:

<u>By CM/ECF Receipt</u>:

Colin V. Lloyd, Esq.,
Attorney for Debtor
302 South 2nd Street, Fort Pierece, FL 34950

Robin R. Weiner, Trustee,
P.O. Box 559007
Fort Lauderdale, FL 33355

U.S. Trustee
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

<u>By First Class Mail</u>:

John H.W. Gefaell
9011 Castle Harbour Circle
Vero Beach, FL 32963

C96.2408

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

John H.W. Gefaell d/b/a Tall Grass Capital          Case No. 12-13561-EPK
Partners, LLC, f/d/b/a Warm Springs                 Chapter 13
Development, LLC,

      Debtor.

_____/

### AFFIDAVIT IN SUPPORT OF
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, _____**Alexis McKinnon**_____, being duly sworn, deposes and states:

1.      I am a _____**Assistant Secretary**_____ of American Home Mortgage Servicing, Inc. ("AHMSI") and am authorized to sign this Affidavit on behalf of AHMSI, as servicing agent for Wells Fargo Bank, N.A., as Trustee for ABFC 2004-OPT4 Trust, ABFC Asset-Backed Certificates, Series 2004-OPT4 ("Movant") with respect to a certain loan (the "Loan") provided to Debtor, which Loan is evidenced by the Note (defined below) and secured by the Mortgage (defined below). This Affidavit is provided in support of the Motion for Relief from Stay filed contemporaneously herewith (the "Motion"). In preparation for signing this Affidavit, I have reviewed the Motion and all Exhibits to the Motion.

2.      As part of my job responsibilities for AHMSI, I am familiar with the types of records maintained by AHMSI in connection with the Loan and the procedures for creating those types of records. I have access to the books, records and files of AHMSI that pertain to the Loan and extensions of credit given to Debtor(s) concerning the Property (defined below).

3.      The information in this affidavit is taken from AHMSI's business records regarding the Loan. I have personal knowledge of AHMSI's procedures for creating these types of records. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business records, or from information transmitted by persons with personal knowledge; (b) kept in the course of AHMSI's regularly conducted business activities; and (c) it is the regular practice of AHMSI to make such records.

4.      The Debtor has executed and delivered or is otherwise obligated with respect to the promissory note in the original principal amount of $676,800.00 (the "Note"). A true and correct copy of the Note is attached to the Motion as Exhibit A.

5.      AHMSI's records reflect that Wells Fargo Bank, N.A., as Trustee for ABFC 2004-OPT4 Trust, ABFC Asset-Backed Certificates, Series 2004-OPT4 is entitled to enforce the Note.

C96.2408

6.     Pursuant to the Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property (as defined in the Motion).  A true and correct copy of the Mortgage is attached to the Motion as <u>Exhibit B</u>.

7.     All rights and remedies under the Mortgage have been assigned to the Movant as evidenced by the assignment of mortgage, a true and correct copy of which is attached to the Motion as <u>Exhibit C</u>.

8.     A true and correct copy of the valuation is attached to the Motion as <u>Exhibit D</u>.

9.     The Debtor failed to make payments with respect to this loan, which is currently in default as of March 1, 2012.

10.    The total pre-petition indebtedness of the Debtor and amount of alleged post-petition default is fully detailed and reflected on the Indebtedness Worksheet, a true and correct copy of which is attached to the Motion as <u>Exhibit F</u>.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed this 23 day of ___May___, 2012.

**State of Florida**

**County of Duval**



AFFIANT    Affiant is personally known.

**THE FOREGOING INSTRUMENT WAS SWORN TO AND SUBSCRIBED before me personally this _23_ day of _May_, 20 12 by _Alexis McKinnon_ who,**

**(CHECK ONLY ONE :)**

☑ IS PERSONALLY KNOWN TO ME,

**OR**

☐ PRODUCED _____ (Type of ID Produced) AS IDENTIFICATION TO ME
AND WHO DID TAKE AN OATH.

**IN TESTIMONY WHEREOF**, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

(Seal)

[Notary Seal: DEMETRIUS FOSTER / MY COMMISSION # EE 092030 / EXPIRES: May 10, 2015 / Bonded Thru Notary Public Underwriters]

**NOTARY PUBLIC**
My Commission Expires: _5-10-2015_

C96.2408



Loan Number: ▮▮▮▮▮   Servicing Number: ▮▮▮▮▮   Date: 02/27/04



NOTE / NOTE

**ADJUSTABLE RATE NOTE**
(LIBOR Index - Rate Caps)



**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

5  CHAPMAN ROAD,  WESTERLY, RI 02891-4501
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.     $676,800.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
Option One Mortgage Corporation, a California Corporation                              .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.     INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of     4.990% . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.     PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on     April 01     ,2004     .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
March 01     ,2034          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     Option One Mortgage Corporation
P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.     $3,629.07     . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of     March 01          ,2007          ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
THREE AND 70/10     percentage point(s) (     3.700%     )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Loan Number: ▮▮▮▮▮▮    Servicing Number: ▮▮▮▮▮▮    Date: 02/27/04

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    7.990%    or less than    4.990%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    10.990%    or less than    4.990%    .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

If within    12 Months    from the date of execution of the Security Instrument I make a full prepayment or a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge if authorized by state law. The prepayment charge will be equal to two percent (2%) of the balance due at date of such pay-off. In no event will such a charge be made if it violates state or federal law.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

RINT6022 (06/19/98)

Loan Number: ▉▉▉▉▉        Servicing Number: ▉▉▉▉▉        Date:   02/27/04

10.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
JOHN H./W. GEFAELL                -Borrower                                                -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                                -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                                -Borrower

[Sign Original Only]

Loan Number: ▇▇▇▇▇▇   Servicing Number: ▇▇▇▇▇▇   Date: 02/27/04

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: JOHN H.W. GEFAELL
Loan #: ▇▇▇▇▇▇
Property Address: 5 CHAPMAN ROAD,   WESTERLY, RI 02891-4501
Loan Amount: $676,800.00

Note Date: 02/27/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

                                        Without Recourse

Option One Mortgage Corporation
A California Corporation

By: *Melissa DaCoste* _____
    Melissa DaCosta

    Assistant Secretary

USD3050.wp (03-14-03)

WHEN RECORDED MAIL TO: 001498          04 MAR -3 AM 11:42          BK 1260 PG 309

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Loan Number: ▮▮▮▮▮▮
Servicing Number: ▮▮▮▮▮▮

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on          02/27/2004          . The mortgagor is
JOHN H.W. GEFAELL AND JANET L GEFAELL

whose address is
5 CHAPMAN ROAD , WESTERLY, RI  02891-4501
("Borrower"). This Security Instrument is given to

Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of          CALIFORNIA          and whose address is

3 Ada, Irvine, CA  92618

("Lender"). Borrower owes Lender the principal sum of
SIX HUNDRED SEVENTY SIX THOUSAND EIGHT HUNDRED
                                        ... AND NO/100THs    Dollars (U.S. 676800          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on          03/01/2034          . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory
Condition and with the Statutory Power of Sale, the following described property located in  Washington
County, Rhode Island:

AP 156 LOT 62

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of 5  CHAPMAN ROAD, WESTERLY
                                                                                                [Street, City]
Rhode Island          02891-4501          ("Property Address"):
                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to
Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes

**RHODE ISLAND** - Single Family
Page 1 of 6                                                                                RISIM11.wp (10-31-02)

Loan Number: ▓▓▓▓        Servicing Number: ▓▓▓▓        BK I 2 6 0 PG 3 I 0
Date:  02/27/2004

and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6                                                                                     RISIM11.wp (10-31-02)

Loan Number: ▉▉▉▉    Servicing Number: ▉▉▉▉    BK I 2 6 0 PG 3 I I
Date: 02/27/04

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**
Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained
in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-
owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as
Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence
within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as
Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies
provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the
Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the
interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to
a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the
Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's
good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security
Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing
the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the
Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security
interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate
information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan
evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal
residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower
acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property
or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights
or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued
before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with
any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by
Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract
and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds
thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may
apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may
release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute
in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof.
Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate
the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained,
in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a
proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay
for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include
paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys'
fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7 Lender does not have
to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security
Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of
disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower
requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security
Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage
insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage
substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of
the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent
mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly
mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will
accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be
required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided
by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain
mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with
any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give
Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any
condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall
be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5
hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make
an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender
is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured
by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or
postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of
amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not
operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to
commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of

Page 3 of 6        RISIM11.wp (10-31-02)

Loan Number: ▆▆▆▆▆    Servicing Number: ▆▆▆▆▆    BK 1 2 6 0 PG 3 1 2    Date: 02/27/04

the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.



Page 4 of 6    RISIM11.wp (10-31-02)

Loan Number: ▇▇▇        Servicing Number: ▇▇▇    BK 1 2 6 0 PG 3 1 3    Date: 02/27/04

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the STATUTORY POWER OF SALE and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. **Waiver of Homestead.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

24. **Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. **Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

26. **Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. **Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

28. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

Page 5 of 6

RISIM11.wp (10-31-02)

Loan Number: ▬▬▬    Servicing Number: ▬▬▬    BK 1 2 6 0 PG 3 1 4    Date: 02/27/04

**32. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider     [ ] Planned Unit Development Rider     [ ] Occupancy Rider
[ ] Other(s) (specify)

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                                                 -Borrower

_____    _____ (Seal)
Clarajean Snyder                                                 -Borrower

_____ (Seal)    _____ (Seal)
JOHN H W GEFAELL          -Borrower    JANET L GEFAELL          -Borrower

_____ (Seal)    _____ (Seal)
2/27/04                    -Borrower    2/27/04                    -Borrower

STATE OF ~~RHODE ISLAND,~~ Florida, Indian River County ss:

    On this 27 day of February, 2004 , in in said County, before me personally appeared John H.W. Gefaell and Janet L. Gefaell

each and all to me known and known to me to be the person(s) executing the foregoing instrument and acknowledged said execution to be their free act and deed.

TERRY H. SNYDER
MY COMMISSION # DD 179098
EXPIRES: February 21, 2007
Bonded Thru Budget Notary Services

Notary Public

BK 1 2 6 0 PG 3 1 5

EXHIBIT 'A'

That certain tract or parcel of land, together with buildings and improvements thereon, lying and being in the Village of Weekapaug in said Town of Westerly, County of Washington and State of Rhode Island and being shown as Lot #96 on a certain plan or plat entitled, "Plat of land at Weekapaug Beach on Noyes Neck in the Town of Westerly, R.I., showing all the land now owned by the Annie L. Chapman Estate, also showing adjacent properties. Plat complied from surveys by T.G. Hazard, Jr., during 1906 and revisions of same to June 1946 and from actual surveys by Leon L. Holland to June 1947. Compiled and platted June 28, 1947, Leon L. Holland, Civil Engineer, Scale: 1 inch equals 100 feet." Said tract being more particularly bounded as follows:

Beginning at a point on the southerly side of Chapman Road, so-called, said point being the northwesterly corner of the parcel herein conveyed and also being the northeasterly corner of land now or formerly of Charles E. Smith, et ux;

Thence easterly along the southerly line of Chapman Road fifty-nine and seventy-two hundredths (59.72) feet to the northeasterly corner of the parcel herein conveyed, said point also being the northwesterly corner of land now or formerly of Frank B. Avery and wife;

Thence southerly bounded easterly to said Avery land three hundred ten (310') feet, more or less, to land now or formerly of Milan Moscaritolo;

Thence northwesterly and westerly bounded southerly to said Moscaritolo land and land now or formerly of Joan N. Kempfe to the southwesterly corner of the parcel herein conveyed;

Thence northerly three hundred (300') feet to the point and place of beginning. Bounded westerly by land now or formerly of John Robert Walsh, land now or formerly of M.H. Eade, et ux., land now or formerly of E.L. Harvey, land now or formerly of S.R. Smith et ux, and land now or formerly of Charles E. Smith et ux or however otherwise bounded.

Together with all the rights to use all the avenues, roads and lanes designated on said plat, as are now open or may be hereafter opened to public ways, for all purposes for which streets and highways are customarily used in said westerly and also a right of way to the Atlantic Ocean over land now or formerly of Chapman Realty Corporation by such paths as now exist or may be hereafter designated for such.



BK **1260** PG **316**

Loan Number: ▆▆▆▆        Servicing Number: ▆▆▆▆        Date:  02/27/04

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made  February 27, 2004                     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
    Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

5  CHAPMAN ROAD,  WESTERLY, RI 02891-4501

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**The Note** provides for an initial interest rate of          4.990%                  . The
Note provides for changes in the interest rate and the monthly payments, as follows:

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
      **(A) Change Dates**
      The interest rate I will pay may change on the first day of   March 01      2007           ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
      **(B) The Index**
      Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
      If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
      **(C) Calculation of Changes**
      Before each Change Date, the Note Holder will calculate my new interest rate by adding
   THREE AND 70/100                           percentage point(s) ( 3.700%     )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                                USRI0021 (02-23-99)

BK 1260 PG 317

Loan Number: ▉▉▉    Servicing Number: ▉▉▉    Date: 02/27/04

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.990%   or less than   4.990%   . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than   10.990%   or less than   4.990%   .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 2 of 3                                                                                              USRI0022 (02-23-99)

BK **1260** PG **318**

Loan Number: ▄▄▄▄    Servicing Number: ▄▄▄▄    Date: 02/27/04

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
JOHN H M GEFAELL

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)
JANET L GEFAELL

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3                                USRI0023 (02-23-99)

DONNA L. GIORDANO CMC/AAE TOWN CLERK
WESTERLY, RI RET: _____

WHEN RECORDED MAIL TO:  001497          04 MAR -3 AM 11: 42          BK 1260 PG 308

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57076
IRVINE, CA 92619-7076

Loan Number: ▮▮▮▮▮
Servicing Number: ▮▮▮▮▮

_____ [Space Above This Line For Recording data] _____

### WAIVER AND RELEASE OF HOMESTEAD

KNOW ALL MEN BY THESE PRESENTS, that I/we,

    JOHN H.W. GEFAELL

                                                Mortgagor(s) in a Mortgage to

    Option One Mortgage Corporation, a California Corporation                              ,
which is organized and existing under the laws of   CALIFORNIA              and whose address is

3 Ada, Irvine, CA  92618
which encumbers the following described property located in       Washington
County, Rhode Island:
AP 156 LOT 62
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

also known and numbered, 5 CHAPMAN ROAD, WESTERLY, RI, 02891-4501
hereby consent to fully and absolutely waive and release all rights and claims I/we may have in and to said premises
as to a homestead exception under the Rhode Island Homestead Laws now existing or which may hereafter be passed
in relation thereto.

      By the execution of this instrument I/we fully intend that any claim of homestead exemption regarding the above
described property, both now or in the future, be, and is, subordinate and inferior to the Mortgage executed for the use
of            Option One Mortgage Corporation, a California Corporation
and shall be of no force and effect as against said Mortgage at any time.

    Dated this  27    day of    February         , 2004

_____          _____
JOHN H.W. GEFAELL         -Borrower                         -Borrower

_____          _____
                     -Borrower                         -Borrower

_____          _____
                     -Borrower                         -Borrower

STATE OF Florida
COUNTY OF Indian River

    The foregoing instrument was acknowledged before me this    27 day of February, 2004
      , by John H.W. Gefaell.



TERRY R. SNYDER
MY COMMISSION # DD 179038
EXPIRES: February 21, 2007
Bonded Thru Budget Notary Services
                                Notary Public

My Commission Expires:

Page 1 of 1                             DONNA L. GIORDANO CMC/AAE TOWN CLERK,
                                 WESTERLY, RI RET:

RECEIVED FOR RECORD
WESTERLY R.I.

Nov 12,2009 at 12:04:33P

BOOK  1845 PAGE    98
DOC #: 00006015

Loan # ██████████
When Recorded Mail to:
Nicholas Barrett
999 South Broadway
East Providence, RI 02914

_____(space above this line for recording Date)_____

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to Wells Fargo Bank, N.A., as Trustee for ABFC 2004-OPT 4 Trust, ABFC Asset-Backed Certificates, Series 2004-OPT4, c/o American Home Mortgage Servicing, Inc., 4600 Regent Boulevard, Suite 200, Irving, TX 75063-1730, its Successors and Assigns, all beneficial interest under that certain Mortgage dated February 27, 2004 executed by John H.W. Gefaell and Janet L. Gefaell, Mortgagors, and recorded on March 3, 2004 in the Records of Land Evidence of the Town of Westerly, State of Rhode Island, in Book 1260 at Page 309, describing land therein as:

Commonly known as:      5 Chapman Road, Westerly, RI  02891
                        Assessors Plat:  156 Lot:  62

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest and all rights accrued or to accrue under said mortgage.

Sand Canyon Corporation formerly known as Option One Mortgage Corporation

BY: _Michelle Ha_____
Name: _____Michelle Halyard_____

Title: _____Vice President_____

State of _Florida_
County of _Duval_

On _Nov 9th_, 200__, before me, personally appeared _____Michelle Halyard_____,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

GERHARD V. HECKERMANN
Notary Public - State of Florida
My Comm. Expires Sep 23, 2012
Commission # DD 818644
(this area for official seal)

Notary Public
Name _____Gerhard V Heckermann_____
Notary Public in for said State
My Commission expires: _9-23-2012_____

File No.: 305428-219FC

DONNA L. GIORDANO MMC  TOWN CLERK
WESTERLY, RI RET: _Nicholas Barrett + Assoc._

# INDEBTEDNESS WORKSHEET

## DEBT AS OF THE PETITION DATE

**A.**     **Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date: $ 685,442.74**

   1.  Amount of principal: $622,957.76

   2.  Amount of interest:  $0.00

   3.  Amount of escrow (taxes and insurance):  $57,779.18

   4.  Amount of forced placed insurance expended by movant:  $0.00

   5.  Amount of attorneys' fees billed to debtor(s) pre-petition: $0.00

   6.  Amount of pre-petition late fees, if any, billed to debtor(s): $ 4,580.80

   7.  Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above: Accumulated Non-sufficient Funds Charges of $125.000 (if additional space is needed, list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: _____.)

**B.**     **Contractual interest rate:  ___5.000___  (if interest rate is (or was) adjustable, list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; list the exhibit number here: _____.)**

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF 6/25/2012)

C.    **Date last payment was received:**      2/2012

D.    **Alleged total number of payments due post-petition from filing of petition through payment due on 6/25/2012:**            4            .

E.    **All post-petition payments alleged to be in default:**

| Alleged Amount Due Date | Alleged Amount Due ($) | Amount Received | Amount Applied To Principal | Amount Applied To Interest | Amount Applied To Escrow | Late fee Charged (If any) |
|---|---|---|---|---|---|---|
| 03/01/2012 | 5,316.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 04/01/2012 | 5,316.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 05/01/2012 | 5,316.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 06/01/2012 | 5,316.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|  |  |  |  |  |  |  |
| Totals: $ | $21,267.76 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

F.    **Amount of movant's attorneys fees billed to debtor for the preparation, and filing and prosecution of this motion: $ 0.00**

G.    **Amount of movant's filing fee for this motion: $ 176.00**

H.    **Other attorneys' fees billed to debtor post-petition: $ 0.00**

I.    **Amount of movant's post-petition inspection fees: $ 0.00**

J.    **Amount of movant's post-petition appraisal broker's price opinion: $ 0.00**

K.    **Amount of forced placed insurance or insurance provided by the movant post-petition: $0.00**

L.    **Sum held in suspense by movant in connection with this contract, if applicable: $0.00**

M.    **Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor etc (itemize each charge): $ 4,243.20 hazard insurance disbursement**

C96.2408